FILED

2014 APR 24  PM 12 26

UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT

DISTRICT OF CONNECTICUT NEW HAVEN, CT.

| | | |
|---|---|---|
| NATASHA MATELJEVIC | : | 3:14 cv 557 (AWT) |
| VS. | : | CIVIL ACTION NO. |
| YALE UNIVERSITY | : | APRIL 17, 2014 |

## C O M P L A I N T

Plaintiff Natasha Mateljevic, by and through her undersigned counsel, files her suit against Yale University ("Yale"), and in support thereof alleges the following.

### INTRODUCTION

1.  This is a tort action alleging violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX").

2.  In 2001 Natasha Mateljevic came to Yale University to obtain a graduate degree in chemistry and physics with Professor John C. Tully. At that time Professor Tully described her as one of his most brilliant student. Ms. Mateljevic's performance was excellent and she was deigned an honors student.

3.  Ms. Mateljevic met Raphael Crespo, an East Windsor, Connecticut police officer became involved in a relationship in which Mr. Crespo became abusive and controlling. In 2004, Mr. Crespo raped Ms. Mateljevic on campus at gunpoint. Mr. Crespo threatened Ms. Mateljevic with her life if she told anyone; she was terrified of Mr. Crespo and his friends who were also officers with weapons. Ms. Mateljevic continued her

1

graduate studies with distinction while enduring multiple abusive episodes.

4.      Ms. Mateljevic was living at the Hall of Graduate Studies at 320 York Street, New Haven, Connecticut, a Yale University housing facility.  In addition, she was studying and working toward her doctoral requirements at 225 Prospect Street, New Haven, Connecticut, a Yale University academic facility.  Both locations are where Mr. Crespo's abuse occurred including stalking, physical and sexual assault, and kidnapping. During the abuse Ms. Mateljevic continued her graduate studies all the while obtaining honors grades and still being referred as Professor Tully's most brilliant student, and receiving support for her research despite enduring the relationship abuse and fear.  Ms. Mateljevic was too afraid to complain based on Mr. Crespo's police officer status and threats.  Mr. Crespo was eventually arrested for rape, abuse and kidnapping, convicted at trial and sent to jail.

5.      When the violence was occurring, and then when Mateljevic came forward to report the rape and abuse, Yale University denied her Title IX rights and harassed and discriminated against her while she sought access to her education. In fact, once Ms. Mateljevic came forward she was unlawfully retaliated and discriminated against while making concerted efforts to study and conduct her research to continue her science career. Yale harassed and discriminated against Ms. Mateljevic repeatedly according to Title IX law including, inter alia: denying equal access to educational opportunities and making decisions that isolated her from the department, her mentor/advisor, John C. Tully, who suddenly and without warning refused to advise her in her degree program; he would not answer e-mails; he would not allow her to use her original research for her doctoral

dissertation and did not support her research; and, he did not acknowledge her contribution to scholarly publications. Ms. Mateljevic's academic degree program and employment opportunities became diminished when other less qualified candidates received positions resulting in her loss of academic stature and career opportunities.  Ms. Mateljevic's employment was terminated without cause in 2013.

6.    The chain of retaliation began in 2004 once Ms. Mateljevic came forward to report her rape, and continued thereafter.

7.    The defendant used internal controls such as private medical information from the Yale University Health Plan to deny the plaintiff educational and employment opportunities guaranteed by Title IX.

**Parties**

8.     Plaintiff is a female resident of Ohio.  Ms. Mateljevic's began her graduate degree at Yale in June of 2001 until the termination of her employment.

9.    Defendant Yale University is a private university located in New Haven, Connecticut which employs over five (500) hundred individuals.

10.    Yale University has received and continues to receive federal financial assistance and benefits which makes Yale University is subject to the requirements of Title IX.

**Jurisdiction**

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

12.    Defendant is an educational institution receiving federal financial assistance

3

for its education and athletic programs and is an enterprise engaged in commerce. Yale University is a fully accredited, private university.

**Venue**

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 on the grounds that the events giving rise to Ms.Mateljevic's claims occurred in this district, and Yale University is in this district.

**Facts**

14.    In June of 2004, Ms. Mateljevic was crying with a red, bruised face after she was Mr. Crespo's victim as he beat her in his gray Nissan car in front of her dorm hall at 320 York Street on the Yale campus. Mr. Crespo's car was blocking York Street so Yale Police Officer Ivan Griffiths approached the car and viewed the results of Mr. Crespo's physical abuse which included red marks on Ms. Mateljevic's face. Officer Griffiths registered shock when looking in the car. Mr. Crespo hopped out of the car quickly and flashed his police badge to Officer Griffiths who took another look at Mateljevic. Officer Griffiths then told Crespo, "Take this elsewhere – off Yale property. Go make love and not war." Officer Griffith never even asked Ms. Mateljevic if she was okay or needed help or whether she was a Yale student.

15.    Shortly after June 17, 2004, Mr. Crespo intensified his assaults as he was alarmed by the encounter with Officer Griffiths. Ms. Mateljevic was found by other graduate students including Denis Murphy, on the street in the rain, bleeding in her bathrobe. They stayed with her that night.

16.    In the following weeks Ms. Mateljevic tried to galvanize strength to

4

advocate for herself.  Her advisor, Professor Tully was aware of the abuse and one night he gave Ms. Mateljevic his credit card to be used as payment for a one night stay in a hotel room so she could avoid more abuse.

17.    Associate Dean of Yale Graduate School Arts and Sciences, Richard Sleight was notified of the incident before Yale Police acted on Ms. Mateljevic's behalf.  Ms. Mateljevic was made to recount her highly personal and humiliating experience of ongoing rape and abuse to her Graduate Dean Sleight and her Graduate Advisor, Professor John Tully.  Ms. Mateljevic was again traumatized by having to reveal these facts to the academic leaders whom she was relying upon to mentor her science career. Throughout this entire time frame Professor Tully was aware that Mr. Crespo was calling Ms. Mateljevic's office and harassing her.

18.    Later Ms. Mateljevic had to describe her ordeal in detail, again, this time in front of Graduate Dean Sleight and Yale Police Detective Natalie Klotsche.

19.    In violation of Title IX,  Dean of Graduate Studies Richard Sleight and Professor John C. Tully allowed a hostile academic and work environment that  served as a toxic mix for women studying graduate science at Yale.  Professor Tully enabled a sexual predator, Stephen Corcelli, to harass, attempt assault and to discriminate against women in the department.  Mr. Corcelli served as a boss to Rose Murphy, a brilliant graduate student who had to discontinue her graduate studies after complaining to Professor Tully of harassment by Mr. Corcelli, and then experiencing retaliation that she could not endure. Mr. Corcelli harassed Ms. Mateljevic as well, when she was a first year graduate student calling her in the middle of the night many times to get her to come to play strip poker and

5

to watch pornography in Professor Tully's conference room while he was a senior post-doctorate.    Ms. Mateljevic did not complain about Mr. Corcelli based on her ongoing struggles and witnessing the struggles of Rose Murphy.

20.    On February 3, 2005, Mr. Crespo was arrested and charged with, inter alia, several counts of sexual assault in the first degree and several counts of assault and kidnapping.  In May 2006, he was convicted in the New Haven Superior Court on multiple counts of sexual assault against Ms. Mateljevic and he was sentenced to 26 years in prison, suspended after 15, but with life time parole and probation. He is a registered sex offender and Ms. Mateljevic has a life time protective order against him.

21.    During this time the defendant received negative attention from the media regarding Ms. Mateljevic's rape , Dean Sleight and Professor Tully were urging Ms. Mateljevic to leave Yale as soon as was possible.  Professor Tully said this matter was reflecting poorly on him. Professor Tully told YPD detectives, Peter Brano and Thomas Mullin, that he was upset to be involved in this and that Ms. Mateljevic, though his most brilliant student, was now "ruined."

22.    Dean Richard Sleight and Professor John Tully encouraged Ms. Mateljevic to discontinue her academic studies.  They also assigned her graduate work without merit in an attempt to get her to leave and terminate her academic pursuits.

23.    Professor Tully told Ms. Mateljevic's peer academics to not be affiliated with her because it would not be good for their academic advancement.

24.    In February 2006, Ms. Mateljevic was to present her research findings to NASA, the Department of Defense and Air Force at a conference and traveled with

Professor Tully. While traveling with Ms. Mateljevic, Professor Tully told the plaintiff that "you are no good – how could you have allowed yourself to get raped?" He asked why it didn't happen to her colleagues and wanted to know what was wrong with her. At the end of the conference Professor Tully suggested Ms. Mateljevic should not attend the planned ski trip with colleagues. After the conference Professor Tully told Ms. Mateljevic that she "overspent" on the conference trip. However, Professor Tully had booked the whole trip and Ms. Mateljevic had no control over trip costs.

25.     On July 26th, 2006, after the Mr. Crespo's criminal trial Ms. Mateljevic was moved to another office for safety. Professor Tully humiliated Ms. Mateljevic by denigrating her for being in this situation as if she caused her own rape. Professor Tully neglected working with her on her research and did not answer her electric mail correspondence.

26.     Dean Richard Sleight, Professor John Tully and other department members continued to harass Ms. Mateljevic by constantly suggesting that she leave Yale and New Haven.

27.     Professor Tully further attempted to rupture Ms. Mateljevic's access to her education by secretly writing to Ms. Mateljevic's mother on November 8, 2006 to plead with her to get her daughter to leave New Haven.

28.     Professor Tully continued to harass and deny Mr. Mateljevic equal access to her education. He said that she would have to explore other options for her future that were "not academic," and that "you do not have the psychological capacity to be in academia." Professor Tully went on to tell Ms. Mateljevic women want to start families and asked if

she knew of any woman that is top notch, in theoretical chemistry, and do anything in the end that is worthwhile, except, entertain? Ms. Mateljevic told him she wanted to stay in academia.  Professor Tully said she must leave his group.  For the first time ever, Ms. Mateljevic received a High Pass from Professor Tully on independent research instead of Honors.

29.    Professor Tully commented to Detective Peter Brano that that Ms. Mateljevic is "ruined for life," and that "her career is ruined after what has happened to her." Detective Brano told Ms. Mateljevic that she must be careful of Professor Tully because he does not have a healthy way of understanding what happened to her.

30.    In May 2007 Dean Richard Sleight invited Ms. Mateljevic to lunch at the Hall of Graduate Studies.  At the end of the lunch he told her, "I know you are suing us. You will regret this.  We have the best lawyers in the world.  Your career is destroyed."

31.    In August 2007, Professor Tully told Ms. Mateljevic to stop wasting time with lawyers to concentrate on graduating and leaving New Haven.

32.    Due to the harassment of Professor Tully and others in 2007-2008, Ms. Mateljevic left the group and transferred into biomedical engineering.  Professor Tully continually intentionally supplied Ms. Mateljevic with erroneous information about faculty she could continue her academic research with.  Ms. Mateljevic had to give up all her research and start over in a different academic area.

33.    In April, 2011, 16 Yale students filed a complaint with the Department of Education's Office for Civil Rights alleging multiple violations of students' federal rights under Title IX.  The complaint alleged that Yale failed to adopt effective and equitable

policies and procedures. Many of the same problems identified in the students' complaints of discrimination and harassment and denial of equitable treatment while pursuing their academic careers are similar to Ms. Mateljevic's experience.

34.    Ms. Mateljevic worked in the physics department with Professor Meg Urry beginning in May, 2012, teaching as part of a special initiative to bring interactivity and technology into the classroom during a five year agreement.

35.    On December 10, 2012, Yale Police Officer Thomas Mullen informed physics department business manager John Fox that Ms. Mateljevic's rapist, Raphael Crespo was going to be released from prison sometime thereafter Ms. Mateljevic received this information

36.    December 11, 2012, Ms. Mateljevic is called into Department Chair Meg Urry's office and is told all of the sudden that she is an inadequate teacher. Ms. Mateljevic is told she does not have a job next year and that Chair Urry is uncomfortable as she reminds Ms. Mateljevic that she is stepping down as department chair so she could not help her.

37.    Ms. Mateljevic is taken off department announcement and distribution lists. She is locked out of university websites that she used to access and all her colleagues tell her she will no longer be teaching. Ms. Mateljevic's teaching assistants will no longer speak to her and she is locked out of her class.

38.    Ms. Mateljevic is denied access to educational opportunities again.

39.    Ms. Mateljevic is refused references for her academic work at Yale University.

**FIRST CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF 42 U.S.C. §§ 2003-1 et seq.**

1-39    Plaintiff repeats, realleges, and incorporates by reference herein paragraphs 1-39.

40.     Yale retaliated against Natasha Mateljevic in violation of 42 U.S.C. §§ 2000e- 1, et seq. because she came forward to report disparate treatment and was denied her Title IX rights.

41.     Repeatedly and during a course of conduct from 2004 when Ms. Mateljevic was a graduate student to 2012, Ms. Mateljevic endured retaliation by Yale University, and it's agents, in response to her complaints about the hostile environment to which she was being subjected.

42.     Yale's retaliatory acts caused Ms. Mateljevic to suffer adverse consequences in her academic career and employment.

43.     Ms. Mateljevic was harassed, discriminated against and ultimately was terminated from employment at Yale University in retaliation for coming forward to report rape and complaining about the hostile environment to which she was being subjected, and for Yale's noncompliance with Title IX.

44.     As a direct and proximate result of Yale University's actions, Ms. Mateljevic suffered and continues to suffer lost earnings and benefits, emotional pain, adverse medical diagnoses, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

**SECOND CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF CONN. GEN. STAT. §§_46a-60 et seq.**

1-44    Plaintiff repeats, realleges, and incorporates by reference herein paragraphs 1-44.

45.    Conn. Gen. Stat § 46a-60 (4) provides that "It shall be a discriminatory practice...    (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice...."

46.    Yale University retaliated against Ms. Mateljevic for her good faith reporting and complaining about Yale University's noncompliance with Conn. Gen. Stat § 46a-60 (4).

47.    Repeatedly and during a course of conduct from 2004 to 2012, Ms. Mateljevic endured retaliation by Yale University and it's agents in response to her complaints about the hostile environment to which she was being subjected.

48.    Yale University's retaliatory acts caused Ms. Mateljevic to suffer adverse consequences in her employment.

49.    Ms. Mateljevic was harassed, discriminated against and ultimately was terminated from employment at Yale University in retaliation for coming forward to report rape and complaining about the hostile environment to which she was being subjected, and for Yale University's noncompliance with Title IX.

50.    As a direct and proximate result of Yale University's actions, Ms. Mateljevic suffered and continues to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life,

11

and inconvenience.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Natasha Mateljevic prays for relief as follows: (1) with respect to all Claims for Relief, judgment awarding Plaintiff back pay, front pay, damages for adverse medical diagnoses, emotional distress, compensatory damages, and punitive damages in an amount to be determined at trial but no less than $10 million; (2) with respect to all Claims for Relief, an award to Plaintiff of her attorneys' fees and costs; (3) with respect to all Claims for Relief, prejudgment interest at the statutory rate; and (4) such other and further relief as the Court may deem appropriate.

Respectfully submitted,
THE PLAINTIFF,
NATASHA MATELJEVIC

BY:

Michael Dolan
Dolan & Luzzi, LLC
1337 Dixwell Avenue
Hamden, CT 06514
(203) 230-1678
Federal Bar No. ct18220

12